* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin and enters the following Opinion and Award:
 * * * * * * * * * * * EVIDENTIARY MATTERS
Defendants filed a "Motion to re-open the Evidentiary Record" in this matter so that the Full Commission may receive and consider a forthcoming medical report by Dr. Mark Rodger of Wilmington, NC, on October 3, 2011. Plaintiff responded to the Motion and agreed to the same. FOR GOOD CAUSE SHOWN the Full Commission, in its discretion, ALLOWS defendants' *Page 2 
Motion. The Full Commission received Dr. Rodger's note on October 26, 2011, the note is entered into evidence and made part of the record, and the record is hereby closed.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated, and there is no question of misjoinder or nonjoinder of parties.
3. Dates of the injuries which are the subject of this claim are February 6, 2006, and April 30, 2007.
4. The parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. The employer-employee relationship existed between the plaintiff and defendant-employer.
6. Defendant-employer employed three or more employees.
7. The Servicing Agent for defendant-employer was Hewitt Coleman Insurance.
8. Plaintiff's average weekly wage will be determined by Form 22.
9. Both dates of injury have been admitted as compensable on a Medicals-only basis by defendants on a Form 60-Medicals-only.
 * * * * * * * * * * *
The following were submitted to the Deputy Commissioner as: *Page 3 
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Medical Records, Industrial Commission Forms and Medical Bills.
 * * * * * * * * * * *
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Edwin B. Cooper, Jr., M.D., taken on August 13, 2010.
2. Oral deposition of Sameer Mathur, M.D., taken on August 17, 2010.
3. Oral deposition of Francis Pecoraro, M.D., taken on February 15, 2011
 * * * * * * * * * * *
As set forth in the Pre-Trial Agreement and Deputy Commissioner Griffin's May 13, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. What additional indemnity compensation is plaintiff entitled to receive?
2. Whether plaintiff is entitled to spinal surgery as a compensable consequence of either one of his compensable work injuries?
 * * * * * * * * * * *
Based upon the preponderance of the evidence from the entire record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, plaintiff was 40 years old. He testified at the hearing with the assistance of a Spanish foreign language interpreter. *Page 4 
Plaintiff was born in Mexico where he completed what is the equivalent of middle school in the United States. In Mexico, plaintiff worked in the oil and gas refinery industry.
2. In the United States, plaintiff was employed for approximately 10 years with Prestage Farms as a sow inseminator. His job duties required that he inseminate sows, move hogs from one place to another, and slaughter hogs.
3. On February 6, 2006, plaintiff injured his back when a 300 pound hog he was holding to be slaughtered, pulled and jerked him. Plaintiff immediately reported the injury to his manager and the low back claim was accepted as compensable by defendants.
4. As a result of the February 6, 2006 injury, plaintiff received medical treatment and underwent a course of physical therapy. He was provided work restrictions of no lifting greater than 10 pounds, no pushing, pulling, bending or squatting, which were accommodated by defendant-employer.
5. On January 18, 2007, plaintiff returned to Clinton Urgent Care with reports of continued back pain, which included muscle spasms and tightness in the thoracic and lumbar spine. At this visit, the medical provider released him to return to work without restrictions.
6. On April 30, 2007, plaintiff suffered another injury and/or aggravated or exacerbated his prior low back condition. On the date of the accident, plaintiff was disposing of dead sow and hog placentas in an incinerator when he experienced immediate pain in his back. Defendants accepted liability for plaintiff's April 30, 2007 injury via filing a Form 60 on August 16, 2007.
7. On May 8, 2007, plaintiff was initially evaluated at Clinton Urgent Care where he was prescribed medications and assigned light duty restrictions. *Page 5 
8. On June 14, 2007, plaintiff reported persistent pain, with pins and needles sensations and burning, aching and stabbing pain in his back. He was released to return to work without restrictions.
9. On June 26, 2007, defendant-employer terminated plaintiff for accumulating too many safety violations. At the time of his termination, plaintiff failed to wear safety glasses as required. The Full Commission finds that defendant-employer terminated plaintiff for reasons unrelated to his workers' compensation injury and for which a non-injured employee would have been terminated.
10. On September 10, 2007, plaintiff returned to Dr. Barry I. Katz, a neurosurgeon, for treatment of his lower back condition. Dr. Katz referred plaintiff to a pain management specialist.
11. On February 12, 2008, plaintiff presented to Dr. Francis Pecoraro, a board-certified physical medicine and rehabilitation specialist. Dr. Pecoraro recommended an MRI scan and transforaminal epidural injections. He also prescribed Hydrocodone to control plaintiff's pain. Dr. Pecoraro noted plaintiff was on disability.
12. On May 14, 2008, Dr. Pecoraro performed an L5-S1 transforaminal injection. It was noted that plaintiff did not receive any benefit from the injection. As a result, Dr. Pecoraro recommended another course of physical therapy. On July 15, 2008, Dr. Pecoraro noted plaintiff "just wants to get back to work."
13. While attending physical therapy, plaintiff reported no real benefit from the treatment. Dr. Pecoraro recommended a TENS unit in conjunction with therapy. He wrote plaintiff completely out of work beginning September 12, 2008. *Page 6 
14. On October 2, 2008, plaintiff continued to report no benefit from therapy. Dr. Pecoraro recommended a second injection and the possibility of a spinal cord stimulator. If plaintiff's pain did not improve, then Dr. Pecoraro anticipated a surgical consult.
15. On January 5, 2009, plaintiff returned to Dr. Katz with complaints of back pain. Dr. Katz deferred any additional recommendations until he reviewed plaintiff's most recent MRI scan. On January 22, 2009, Dr. Katz noted some degenerative changes on the MRI scan from L4 through S1, but also noted no severe stenosis. Dr. Katz recommended plaintiff continue conservative treatment and undergo a Functional Capacity Evaluation. In his opinion, plaintiff was not a surgical candidate.
16. On February 26, 2009, Dr. Katz reviewed the results of the Functional Capacity Evaluation, which revealed plaintiff capable of work in the medium category. Dr. Katz released plaintiff at maximum medical improvement with a 0% permanent partial impairment rating.
17. On July 14, 2009, plaintiff underwent an Independent Medical Evaluation with Dr. Edwin Cooper, a board-certified orthopaedic surgeon. After conducting an examination and reviewing plaintiff's medical records and films, Dr. Cooper diagnosed plaintiff with a bulging disc at L5-S1 with an annular tear at that level with radiculopathy down his left leg. Dr. Cooper recommended plaintiff not return to any work pending further evaluation, including a lumbar discography.
18. On August 28, 2009, Dr. Gary Smoot with Cary Orthopaedic performed a discography from L4-S1 to evaluate potential surgical alternatives. Following the discography, Dr. Smoot referred plaintiff to Dr. Sameer Mathur in his practice for a surgical consult.
19. On September 23, 2009, plaintiff presented to Dr. Mathur for a surgical consultation. Based upon his review of the MRI scan, Dr. Mathur did not see any evidence of *Page 7 
disc herniation or any evidence of nerve root compression of the lumbar spine. Dr. Mathur discussed a surgical option of an L5-S1 fusion/decompression. He opined the success of the surgery is about 65% to 70%, but "may not provide a good outcome as far as taking away his pain." In his opinion, the discogram performed by Dr. Smoot did not show a very clear pattern of pain. Dr. Mathur also informed plaintiff of other conservative options.
20. As of the date of the hearing before the Deputy Commissioner, plaintiff continues to experience pain in his back with pain and numbness in his left leg. He is unable to bend over for any period of time and he cannot lift heavy objects. He also has difficulty walking any distance. Plaintiff described his pain during his testimony, "The pain is as if somebody is taking needles and more when I'm sitting down like — like right now, it's like when I'm bent. And the — my leg goes numb. That's what I've always felt. The — the pain goes away, but then it comes back."
21. Plaintiff elected to have the surgery to relieve his pain and back condition, but the procedure has been denied by defendants.
22. Since his termination from employment, plaintiff submitted an application to a local McDonald's restaurant, but was not hired. In light of his back condition and vocational history, plaintiff did not continue to search for employment.
23. Based upon his review of plaintiff's medical records, diagnostic studies, and his one-time examination of plaintiff, Dr. Mathur opined plaintiff was not a viable candidate for lumbar spinal fusion surgery. Dr. Mathur further opined plaintiff could work with some type of lifting, bending and twisting restrictions.
24. Based upon his review of plaintiff's MRI scan from March 6, 2008, Dr. Cooper opined plaintiff had disc bulging at two different levels, the L4-5 level and L5-S1 level. He *Page 8 
noted high intensity zones at L5-S1, which were suggestive of some type of trauma at that disc level. Dr. Cooper also noted an annular tear at the L5-S1 level. As a result of plaintiff's compensable back injury of April 30, 2007, Dr. Cooper recommended plaintiff undergo a fusion surgery.
25. Dr. Pecoraro provided pain management treatment from February 12, 2008, through November 13, 2008. Dr. Pecoraro noted plaintiff failed all the conservative treatment he underwent. Methadone therapy is the last conservative treatment he would offer. Before implanting a spinal cord stimulator, Dr. Pecoraro would obtain a surgical consult on spinal surgery. Based on his examinations, he believed plaintiff wanted to return to work and his complaints of pain and symptoms were not exaggerated. Dr. Pecoraro opined plaintiff's compensable injuries caused the conditions for which he provided treatment. Given plaintiff's clinical presentations, Dr. Pecoraro further opined plaintiff was incapable of performing any work as of his last examination on November 13, 2008.
26. The Full Commission has reviewed and carefully weighed all of the evidence and the testimony, including that of Drs. Cooper, Katz, Mathur, and Pecoraro. Dr. Pecoraro, the authorized pain management specialist, managed plaintiff's treatment over approximately eight months as opposed to the one-time evaluations conducted by Drs. Cooper and Mathur. Dr. Katz referred plaintiff to pain management for further evaluation and treatment. As a result, the Full Commission assigns greater weight to the medical opinion of Dr. Pecoraro on plaintiff's ability to return to work. Therefore, the Full *Page 9 
Commission finds that plaintiff is medically restricted from any work due to his compensable back injuries.
27. With respect to the recommendation for surgical fusion/decompression, the two surgeons offered opposing opinions on the results of the diagnostic testing, the types of spinal abnormalities found on the MRI scan, and whether surgery is warranted. Therefore, the Full Commission is ordering plaintiff to return to Dr. Pecoraro, the authorized treating pain specialist, for a surgical referral.
28. Approximately 12 days prior to his termination from employment, plaintiff reported to his medical provider that he was experiencing persistent pain with a burning, aching and stabbing sensation in his back. After his termination, he continued to seek medical treatment and report similar symptoms to his medical providers. Notwithstanding plaintiff's prior complaints of pain prior to June 27, 2007, the first medical record placing him out of work was on September 12, 2008, by Dr. Pecoraro.
29. Based upon the preponderance of the credible medical and vocational evidence of record, and as a result of his admittedly compensable injuries, plaintiff was temporarily totally disabled beginning September 12, 2008, and continuing until he returns to work or further order of the Commission.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 5, 2006, and April 30, 2007, plaintiff sustained compensable injuries by accident to his lower back which were accepted by defendants by the filing of respective Form 60 Employer's Admission to Employee's Right to Compensation. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's termination from employment with defendant-employer is attributable to plaintiff's misconduct, unrelated to the compensable injury, for which a non-disabled employee would ordinarily be terminated. Therefore, plaintiff's termination on June 26, 2007, constitutes a *Page 10 
constructive refusal to perform the work provided. Seagraves v.Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
4. Pursuant to the Seagraves analysis, following plaintiff's constructive refusal of suitable employment, plaintiff must again prove his ongoing disability. Plaintiff can meet his burden by establishing that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982); Seagraves v. Austin Co. ofGreensboro, supra.
5. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In the instant case, plaintiff has established under the first prong ofRussell, by the preponderance of the medical evidence of record, that he was unable to perform any type of employment because of his work-related *Page 11 
injuries. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra. Therefore, plaintiff was disabled from employment due to the compensable injuries and he is entitled to receive weekly compensation beginning September 12, 2008, and continuing until he returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. ofGreensboro, supra.
6. As a result of the injuries by accident, plaintiff is entitled to receive further medical treatment that would effect a cure, give relief or lessen his period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25. Plaintiff shall return to Dr. Pecoraro for a referral to a surgeon to determine if he is an appropriate candidate for fusion/decompression procedure.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay temporary total disability benefits at his weekly compensation rate beginning September 12, 2008, and continuing until plaintiff returns to work or further order of the Commission.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his compensable back injuries when bills for the same have been submitted in accordance with Industrial Commission procedures.
3. IT IS HEREBY ORDERED that plaintiff shall return to Dr. Pecoraro for a referral to a surgeon to evaluate his candidacy for fusion/decompression surgery. Should the surgeon *Page 12 
referred by Dr. Pecoraro recommend surgery, defendants shall authorize the surgery and follow-up care.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff in Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be paid as follows: 25% of the accrued compensation due plaintiff shall be deducted from said amount and paid in one lump sum directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid to plaintiff's counsel.
5. IT IS HEREBY ORDERED that defendants shall provide a completed Form 22 Statement of Days Worked and Earnings of Employee within 20 days of receipt of this Opinion and Award or the parties may file a stipulation to the average weekly wage and resulting weekly compensation rate within the time allotted.
6. Defendants shall pay the costs.
This the 14th day of November, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1